## In re ALLOY METAL WIRE WORKS, INC., Debtor.

### Bankruptcy No. 84–01922G.

United States Bankruptcy Court,
E.D. Pennsylvania.

April 25, 1986.

Kenneth F. Carobus, Morris & Adelman, P.C., Philadelphia, Pa., for debtor, Alloy Metal Wire Works, Inc.

Charles W. Boohar, Pelino & Lentz, Philadelphia, Pa., for movant, Camalloy Wire, Inc.

Nathan Lavine, Marvin Krasny, Adelman Lavine Krasny Gold & Levin, Philadelphia, Pa., for Creditors' Committee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The focus of the instant controversy is the size of the administrative expense that should be allowed to the debtor's landlord. On the basis of the findings and conclusions expressed below, we will allow the landlord an administrative expense in the amount of $19,257.53.

We summarize the facts of this controversy as follows:[1] The claimant, Camalloy Wire, Inc. ("Camalloy"), is the owner of a parcel of improved realty on which a wire drawing plant is operated. Camalloy and the debtor agreed that the debtor would lease portions of the realty for the storage of its personalty at a rate of $1.50 per square foot per year which is a reasonable charge for the rental of the premises. An involuntary petition for relief under chapter 7 of the Bankruptcy Code ("the Code") was filed against the debtor. This filing was subsequently converted to a chapter 11 case. After this conversion the debtor successfully moved this court for approval of the unexpired lease with Camalloy. The debtor then prevailed on its motion for approval of its agreement to sell the personalty to PNS Industries, Inc. ("PNS"). The agreement provided that PNS would pay for the personalty as the goods were withdrawn from the leasehold and that, in

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

any event, the full purchase price was due 150 days from the date of the agreement which due date was June 22, 1985. Under the agreement, PNS agreed to pay Camalloy the current rental rate for the realty on which the personalty was stored. PNS defaulted on the purchase agreement by failing to pay Camalloy the rental charge for the realty, and consequently, PNS was evicted from the plant on April 5, 1985.

Camalloy filed the instant application for administrative expenses against the debtor's estate claiming entitlement to rent for the period between April 5, 1985[2] and November 4, 1985. The floor space in use during the period was 22,000 square feet.

 The issue for decision is the period during which the debtor is liable for the use of the floor space. Both parties agree that November 4 was the terminus of the pertinent period, but the parties differ on its commencement. The debtor asserts that liability did not arise until PNS defaulted on the purchase agreement with the debtor by failing to pay for the merchandise on June 22, 1985. Camalloy contends that the default is irrelevant since the sale transaction was between the debtor and a third party who was not privy to the lease agreement with the debtor and Camalloy. Although the record of this case is turbid, it appears that the debtor implicitly sublet the realty in question to PNS. The failure of PNS to pay the rental to Camalloy did not relieve the debtor of its concurrent duty to pay rent. We therefore conclude that the debtor is liable for rent from April 5 to November 4 at a rate of $1.50 per square foot per year or 22,000 square feet for a total of $19,257.53.

The debtor has requested that any administrative expense allowed to Camalloy not be paid until it is clear that the estate consists of sufficient funds to pay *all* administrative expenses or until the size of the estate is ascertained so that all administrative claimants may be paid pro rata. We find this a sufficient basis for denying the immediate release of any funds. Disbursement will be made in due course or on proper application of Camalloy.

We will accordingly grant Camalloy's application for the allowance of administrative expenses in the amount of $19,257.53, but will stay payment of such expenses until the further order of this court.

---

**2.** It is unclear why Camalloy chose April 5 as its asserted beginning of the relevant period, but it is coincident with the eviction of PNS from the realty. Since both parties are in apparent harmony that the term in question commences no earlier than April 5, we do not scrutinize any earlier period as worthy of the accrual of expenses for inclusion in the instant application.